**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>　　131 M Street, N.E.,<br>　　Suite 4NW02F<br>　　Washington, D.C. 20507<br><br>　　　　Plaintiff,<br><br>　v.<br><br>EPIQ FOOD HALL WOODBRIDGE, LLC,<br>　　14067 Noblewood Plaza,<br>　　Woodbridge, VA 22193<br><br>4 BROTHERS PROPERTIES, LLC,<br>　　7440 Assateague Drive,<br>　　Jessup, MD 20794<br><br>　　　　Defendants. | Civil Action No. _____<br><br><br>　　　COMPLAINT<br><br><br>　JURY TRIAL DEMAND |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race and to provide appropriate relief to Charging Party Shyreece Brown, Sr. As alleged with greater particularity below, the Commission alleges that Defendant Epiq Food Hall Woodbridge, LLC unlawfully subjected Brown to a hostile work environment and constructively discharged him from his employment because of his race (Black) in violation of Title VII. Defendant 4 Brothers Properties, LLC is liable in this matter under the principles of successor liability.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the U.S. District Court for the Eastern District of Virginia.

## PARTIES

3.      Plaintiff U.S. Equal Employment Opportunity Commission ("the Commission") is the federal agency charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action under Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.      From at least April 1, 2021, through October 20, 2023, Defendant Epiq Food Hall Woodbridge, LLC ("Defendant Epiq Food Hall") owned and operated a dining establishment, epiQ Food Hall, located at 14067 Noblewood Plaza, Woodbridge, Virginia.

5.      From at least April 1, 2021, through October 20, 2023, Defendant Epiq Food Hall was engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e-(b), (g), and (h).

6.      From at least April 1, 2021, through October 20, 2023, Defendant Epiq Food Hall, a Virginia limited liability company, was continuously doing business in the Commonwealth of Virginia.

7.      During calendar year 2022, Defendant Epiq Food Hall employed fifteen or more employees for at least 20 calendar weeks.

8. Since at least October 20, 2023, Defendant 4 Brothers Properties, LLC ("Defendant 4 Brothers") has continuously been a Virginia limited liability company doing business in the Commonwealth of Virginia.

9. Since at least October 20, 2023, Defendant 4 Brothers has engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e-(b), (g), and (h).

10. On October 20, 2023, Defendant 4 Brothers purchased the assets of Defendant Epiq Food Hall ("the sale").

11. As part of the sale, Defendant 4 Brothers purchased the trade name "epiQ Food Hall."

12. As part of the sale, Defendant 4 Brothers purchased the goodwill of the food hall known as "epiQ Food Hall" located at 14067 Noblewood Plaza, Woodbridge, Virginia 22193 ("Business Premises").

13. As part of the sale, Defendant 4 Brothers purchased Defendant Epiq Food Hall's phone number, fax number, email address, website, and social media accounts (Instagram and Facebook).

14. As part of the sale, Defendant 4 Brothers purchased Defendant Epiq Food Hall's leasehold interest in the Business Premises, as well as Defendant Epiq Food Hall's interest as sublessor under each and all of the subleases and/or sublicensees for various food stations at the Business Premises.

15. As part of the sale, Defendant 4 Brothers purchased all of Defendant Epiq Food Hall's trade fixtures, equipment, furniture, and machinery used in connection with the operation of the food hall.

16.     As part of the sale, Defendant 4 Brothers purchased all supplies and inventory owned by Defendant Epiq Food Hall.

17.     Immediately and continuously following the sale, there has been substantial continuity of business operations at the epiQ Food Hall by Defendant 4 Brothers.

18.     Following the sale, Defendant 4 Brothers took over the day-to-day operations of the epiQ Food Hall, using the same name and location as when it was operated by Defendant Epiq Food Hall.

19.     Defendant 4 Brothers continues to utilize the same website (www.epiqfoodhall.com), Facebook© page, and Instagram© page (@epiqfoodhall) as were used by Defendant Epiq Food Hall to advertise and market epiQ Food Hall.

20.     Upon information and belief, Defendant 4 Brothers continues to operate the epiQ Food Hall using the same trade fixtures, equipment, furniture, and machinery used by Defendant Epiq Food Hall.

21.     At the time of purchase, Defendant 4 Brothers had at least constructive notice of the EEOC charge which serves as the jurisdictional basis for this action.

22.     Defendants' First Addendum: Terms and Conditions of Business Sale to their Agreement for Purchase and Sale included an indemnification clause agreeing that Defendant Epiq Food Hall as the business seller, "shall be responsible for any and all expenses or claims resulting from the operation of the Business, the basis for which arose before the Closing Date. Business Seller agrees to indemnify the Purchaser for any and all damages that result from such pre-Closing expenses or claims, including attorney's [fees] and costs incurred."

23.     It is not assured that Defendant Epiq Food Hall has had, or currently has, the ability to provide the requested relief in this matter.

24.     Defendant 4 Brothers is liable in this matter under the principles of successor liability.

## ADMINISTRATIVE PROCEDURES

25.     More than thirty (30) days prior to the institution of this lawsuit, on June 3, 2023, Charging Party Shyreece Brown filed a charge of discrimination ("Charge") with the EEOC alleging violations of Title VII by Defendant Epiq Food Hall.

26.     On July 2, 2024, the Commission issued to both Defendants a Letter of Determination finding reasonable cause to believe that they violated Title VII and inviting them to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

27.     When it issued the Letter of Determination to Defendant 4 Brothers, the Commission also provided it with a copy of the Charge.

28.     On July 2, 2024, the Commission issued a conciliation proposal to Defendant Epiq Food Hall to provide it an opportunity to remedy the discriminatory practices described in the Letter of Determination on terms acceptable to the Commission.

29.     On July 2, 2024, the Commission issued a conciliation proposal to Defendant 4 Brothers to provide it an opportunity to remedy the discriminatory practices described in the Letter of Determination on terms acceptable to the Commission.

30.     The Commission was unable to secure from either Defendant a conciliation agreement acceptable to the Commission.

31.     On July 17, 2024, the Commission issued a Notice of Failure of Conciliation to Defendant Epiq Food Hall.

32.     On July 17, 2024, the Commission issued a Notice of Failure of Conciliation to Defendant 4 Brothers.

33.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

34.     Brown was employed by Defendant Epiq Food Hall from on or about June 27, 2022, to January 16, 2023.

35.     Brown began his employment as the Operations Manager for the epiQ Food Hall and became the General Manager in or around November 2022.

36.     During Brown's employment, he was supervised or managed by Defendant Epiq Food Hall's Owner, Michael Kim.

37.     Kim represented himself as the Owner of epiQ Food Hall in news articles covering its opening.

38.     Kim was often present at epiQ Food Hall.

39.     Beginning shortly after Brown's hire, and continuing throughout his employment, Kim subjected Brown to unwelcome and offensive harassment because of his race (Black), including but not limited to the following conduct:

         a)      Kim frequently made derogatory comments about black customers and employees, telling Brown that they were "not smart," "ignorant," and "ghetto."

         b)      On an occasion when Brown and Kim were struggling to put up a banner outdoors and a very tall black employee of a food vendor asked if they needed help, Kim declined, telling Brown that the individual was not smart enough for the task.

         c)      In or around October 2022, Brown asked Kim about his frequent disparaging of African Americans as unintelligent. Kim said that he did this because such

6

individuals "act ignorantly," and that even Brown had said and done ignorant things in conversations with him. Upon hearing this, Brown told Kim that he needed to take five minutes and went outside to calm down. Brown returned to work because he did not want to lose his job.

d)      Kim told Brown that customers did not want "ghetto" people serving them, which Brown understood to mean black employees.

e)      Kim referred to black patrons as "riff-raff."

f)      Brown was aware that Kim had cancelled events like open mic nights, go-go events, and karaoke because they had attracted predominately black customers.

g)      In or around October 2022, Kim instructed Brown to calm down a group of black patrons at the bar, who Kim perceived as rowdy. When Brown questioned why Kim was asking him to do so, Kim said, "Because you look like you speak thug language."

h)      In or around January 2023, Kim used the racial epithet "niggers" in reference to Brown and African Americans.

i)      Specifically, Brown and Kim were working on promotional mailers. Kim asked Brown his opinion of the mailers, and Brown told him that he did not think that they were a good idea because they did not include coupons to help bring in customers. Kim became angry with Brown and told him, "This is why I am in my position and you are in your position." Kim then began a sentence saying, "This is why niggers . . . ," but stopped suddenly after using the racial epithet.

j)      After Kim used the n-word, Brown immediately got up and left the food hall.

40.      Shortly after this incident, Brown's work began to be publicly nit-picked and he was criticized by Paola Salinas, the Director of Operations.

7

41.     Also, after Kim's use of the n-word, Kim suddenly brought in a new manager, who was introduced to staff as the point person to report to when Salinas was not in the building. Previously, Brown was the point person.

42.     Brown resigned on January 16, 2023.

43.     Brown resigned his employment because after the n-word incident and other racial harassment by Kim, Brown believed that he was being pushed out as General Manager and that his resignation was the only way to avoid being subjected to further racial harassment.

44.     In his resignation letter, Brown explained that he was resigning "due to what has become a hostile work environment for me." He stated that he "never fully felt comfortable at epiQ Food Hall because of the discrimination that has been shown toward me and other African American employees."

45.     Brown's resignation letter included examples of Kim's disparaging comments and actions towards African American customers and staff, including Kim's "removal of [k]araoke and live bands due to the heavy presence of African Americans or the 'riff-raff' as Mr. Kim referred to his clientele as on many occasions."

46.     Brown's resignation letter noted the lack of reporting avenues available to him to complain about Kim's harassing conduct, stating that "[t]here is no H[uman] R[esources] for me to contact to let them know of these said issues."

47.     Defendant Epiq Food Hall did not have a Human Resources department or Human Resources personnel to whom Brown could have reported Kim's harassment.

48.     Defendant Epiq Food Hall's Employee Handbook did not contain any complaint procedures for reporting discrimination or harassment.

49.     By permitting the racially hostile work environment to arise and continue, Defendant Epiq Food Hall, through its proxy, Kim, created working conditions sufficiently intolerable that a reasonable person in Brown's circumstances would have felt compelled to resign their employment.

## CAUSES OF ACTION

### COUNT I: Hostile Work Environment Because of Race

50.     The Commission repeats and incorporates by reference the factual allegations set forth in Paragraphs 10 through 24 and 34 through 49.

51.     Defendants subjected Brown to unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by creating a hostile work environment because of race.

52.     The discriminatory practices described above were based on race; unwelcome; and sufficiently severe or pervasive, both objectively and subjectively, to alter the terms and conditions of Brown's employment.

53.     Defendant Epiq Food Hall is liable for the harassing conduct of its proxy, Michael Kim, as the Owner of Defendant Epiq Food Hall.

54.     Defendant 4 Brothers is liable under a theory of successor liability.

55.     The effect of the practices complained of in Paragraphs 50 through 54, above, has been to deprive Brown of equal employment opportunities and to otherwise adversely affect his status as an employee because of his race (Black).

56.     The unlawful employment practices described above were intentional.

57.     The unlawful employment practices described above were done with malice or with reckless indifference to the federally protected rights of Brown.

**COUNT II: Constructive Discharge**

58.     The Commission incorporates by reference the factual allegations set forth in Paragraphs 10 through 24 and 34 through 49.

59.     Defendant Epiq Food Hall created the discriminatory terms and conditions of employment described above, and these terms and conditions were so intolerable that a reasonable person in Brown's circumstances would have felt compelled to resign their employment.

60.     Defendant 4 Brothers is liable under a theory of successor liability.

61.     The effect of the practices complained of in Paragraphs 58 through 60, above, has been to deprive Brown of equal employment opportunities and to otherwise adversely affect his status as an employee because of race (Black).

62.     The unlawful employment practices described above were intentional.

63.     The unlawful employment practices described above were done with malice or reckless indifference to the federally protected rights of Brown.

**<u>PRAYER FOR RELIEF</u>**

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendants, their owners, members, officers, successors, assignees and all persons in active concert or participation with them, from engaging in race-based harassing conduct and other employment practices that discriminate on the basis of race;

B.     Order Defendants to institute and carry out such policies, practices, and programs that provide equal employment opportunities and ensure Defendants' operations are free from race-based harassment and race discrimination, including but not limited to: (1) the institution of

effective anti-harassment, discrimination, and retaliation policies; (2) the institution of effective reporting procedures, including but not limited to providing multiple avenues for employees to make complaints or reports of discrimination or harassment; (3) the posting of notices required under Title VII; (4) mandatory training on race discrimination and harassment for all management/supervisory employees who have the authority to receive complaints of discrimination and/or harassment, or the authority to take other employment actions on behalf of Defendants; and (5) mandatory training that addresses best practices and proficient techniques for conducting racial harassment investigations for all employees whose job duties include conducting such investigations;

C.      Order Defendants to make whole Charging Party Brown by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial;

D.      Order Defendants to make whole Charging Party Brown by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including but not limited to emotional pain, suffering, embarrassment, degradation, and humiliation, in amounts to be determined at trial;

E.      Order Defendants to pay Charing Party Brown punitive damages for their malicious and reckless conduct described above, in amounts to be determined at trial;

F.      Grant such further relief as the Court deems necessary and proper in the public interest; and

G.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

11

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

KARLA GILBRIDE
General Counsel

DEBRA M. LAWRENCE
Regional Attorney

 /s/ Maria Luisa Morocco
MARIA LUISA MOROCCO
Va. Bar ID 94043
Assistant Regional Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington Field Office
131 M Street, NE,
Suite 4NW02F
Washington, DC 20507
Phone: (202) 921-4287
Fax: (202) 827-2349
Maria.morocco@eeoc.gov

CHRISTINE T. JOHNSON
D.C. Bar No. 1739030
Trial Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington Field Office
131 M Street, NE
Suite 4NW02F
Washington, DC 20507
Phone: (202) 921-3022
Fax: (202) 827-2349
christine.t.johnson@eeoc.gov

Dated:        August 29, 2024.