**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:24-cv-01518-PTG-WBP |
| | ) | |
| EPIQ FOOD HALL | ) | |
| WOODBRIDGE, LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| 4 BROTHERS PROPERTIES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF EEOC'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT 4 BROTHERS PROPERTIES, LLC'S MOTION TO
DISMISS**

**I.    PRELIMINARY STATEMENT**

In its Complaint, the U.S. Equal Employment Opportunity Commission ("Plaintiff" or

"the EEOC") alleges that Charging Party Shyreece Brown, Sr., was subjected to a hostile work

environment and constructively discharged because of his race in violation of Title VII of the

Civil Rights Act of 1964, as amended ("Title VII"). The Complaint further alleges that

Defendant 4 Brothers Properties, LLC ("Defendant 4 Brothers") became liable for these claims

as a successor when it purchased the assets of Defendant Epiq Food Hall Woodbridge, LLC,

Brown's employer, and seamlessly continued the business operations of epiQ Food Hall.

Defendant 4 Brothers brings its motion under Federal Rule of Civil Procedure 12(b)(6), arguing

that the EEOC has failed to state claims against it for which relief can be granted. ECF Doc. 12,

Def. Motion to Dismiss Pl.'s Compl. as to Def. 4 Brothers Properties, LLC; ECF Doc. 13, Def.

Mem. in Support of Defendant 4 Brothers Properties, LLC's Motion to Dismiss Pl.'s Compl. ("Def. Mem.") at pp. 4-6. It is clear, however, that the EEOC's Complaint contains sufficient factual allegations to meet the standard for a plausible claim of successor liability under Title VII against Defendant 4 Brothers. As is explained below, the EEOC's Complaint alleges Defendant 4 Brothers had at least constructive notice of Brown's claims when it purchased Defendant Epiq Food Hall Woodbridge, LLC's assets because Brown filed his Charge of Discrimination ("Charge") months before the purchase, and the Charge therefore would have been discovered through due diligence by Defendant 4 Brothers. ECF Doc. 1, Complaint ("Compl."), at ¶¶ 10, 21, 25. Additionally, the Complaint sufficiently alleges Defendant Epiq Food Hall Woodbridge, LLC's inability to provide relief, including the injunctive relief sought in the Complaint, and that Defendant 4 Brothers continued its predecessor's business by operating the same food hall at the same location under the same trade name using the same equipment and marketing materials. *Id.* at ¶¶ 10-20, 23. As such, the EEOC has plausibility alleged Defendant 4 Brothers' successor liability under Title VII. For the reasons set forth fully below, the Court must deny its Motion to Dismiss.

## II.     LEGAL STANDARD FOR 12(b)(6) MOTION TO DISMISS

The purpose of a Rule 12(b)(6) motion is "'to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the

2

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. When reviewing a Rule 12(b)(6) motion, the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) and *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

## III.    ARGUMENT

### a.    Defendant 4 Brothers Has Ignored the Standard for Successor Liability under Title VII.

"[S]uccessor liability under Title VII is a matter of federal common law" and is an equitable doctrine. *EEOC v. Phase 2 Invs. Inc.*, 310 F. Supp. 3d 550, 562 (D. Md. 2018). The analysis in this context requires the court to "balanc[e] the purposes of Title VII with the legitimate and often conflicting interests of the employer and the discriminatee." *Equal Emp. Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1090–91 (6th Cir. 1974) ("Failure to hold a successor employer liable for the discriminatory practices of its predecessor could emasculate the relief provisions of Title VII by leaving the discriminatee without a remedy or with an incomplete remedy.").

In determining whether to hold a successor employer liable in cases brought under Title VII, courts have applied the following factors first set forth in *MacMillan Bloedel Containers, Inc.*:

> "(1) whether the successor company had notice of the charge; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether it uses the same or substantially the same work force; (6) whether it uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether it uses the same

machinery, equipment and methods of production; and (9) whether it produces the same product."

*Id.* at 1094. "Several other circuits, including the Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh, have … adopted these factors in analyzing when a corporate successor is liable in the Title VII context." *Weintraub v. Bd. of Cnty. Commissioners for St. Mary's Cnty.*, No. CV DKC 2008-2669, 2009 WL 10685453, at *3 (D. Md. May 26, 2009) (listing cases). Later decisions have distilled the *MacMillan* factors into a three-part test: (1) whether the successor had prior notice of the claim against the predecessor; (2) whether the predecessor is able to provide the relief requested; and (3)  whether there has been a sufficient continuity in the business operations of the predecessor and successor. *Lipscomb v. Techs., Servs., & Info., Inc.*, No. CIV.A. DKC-09-3344, 2011 WL 691605, at *8 (D. Md. Feb. 18, 2011) ("The test essentially looks to whether a successor had notice, whether a predecessor had the ability to provide relief, and the continuity of the business."). Although the Fourth Circuit has not yet addressed the issue of successor liability in the context of Title VII, district courts in the Fourth Circuit have applied this three-part test when considering this issue. *See Lipscomb*, 2011 WL 691605, at *7–8; *Phase 2 Invs. Inc.*, 310 F. Supp. 3d at 570 ("this equitable test, then, really comes down to three major factors: whether a successor had notice, whether a predecessor had the ability to provide relief, and the continuity of the business" (internal quotation marks omitted)); *Brown v. Team Placement Serv., Inc.*, No. 9:20-CV-4222-RMG-MHC, 2022 WL 660602, at *7 (D.S.C. Jan. 6, 2022), *report and recommendation adopted*, No. CV 9:20-4222-RMG, 2022 WL 354562 (D.S.C. Feb. 7, 2022) ("the three primary areas of focus considered by courts in evaluating the application of successor liability in the employment context [are]: (1) whether the successor corporation has notice of pending discrimination claims; (2) the predecessor's ability to provide relief; and (3) the continuity of the business. . . . Other than the first two factors, 'the remaining

seven simply provid[e] a foundation for analyzing the larger question of whether there is a continuity in operations and the work force.'") (quoting *Conner v. Colony Lake Lure*, No. 4:97CV01, 1997 WL 816511, at *5 n.3 (W.D.N.C. Sept. 4, 1997)); *Dixon v. Salisbury Senior Hous. I Opco, LLC*, No. 1:17-CV-00430-PX, 2018 WL 6046828, at *2 (D. Md. Nov. 19, 2018); *Lyles v. CSRA Inc.*, No. GJH-18-973, 2018 WL 6423894, at *4 (D. Md. Dec. 4, 2018) ("To balance competing equitable concerns, courts often look to, among other things, three major factors: 1) whether the successor company had notice of the charge, 2) the ability of the predecessor to provide relief, and 3) whether there has been a substantial continuity of business operations." (internal quotation marks omitted)); *Braswell v. Great Expectations of Washington, Inc.*, No. 5:97-CV-41-BRL, 1997 WL 1134125, at *4 (E.D.N.C. Aug. 5, 1997) ("The nine factors enunciated in *MacMillian* can be further distilled into three specific issues: 1) notice; 2) the predecessor's ability to provide relief; and 3) the continuity of the business.").

Defendant 4 Brothers has ignored the Title VII case law and analysis for assessing successor liability. It incorrectly asserts that courts impose successor liability "where 1) the purchaser-company receives a continuing benefit from its predecessor's illegal actions, and 2) the purchasing company had notice of the illegal practice." Def. Mem. at p. 5. As support, it relies solely on *Golden State Bottling Co. v. Nat'l Labor Relations Bd.*, 414 U.S. 168 (1973), a case involving the National Labor Relations Act, not Title VII. Although the *MacMillian* court relied on the Supreme Court's precedents regarding successor liability in the labor law context, including *Golden State Bottling Co.*, to extend successor liability to remedy unfair employment practices in violation of Title VII, 503 F.2d at 1090, Defendant's singular focus on a 50-year-old case addressing an inapplicable statute, while ignoring the entire body of Title VII case law that followed it, is both strange and helpful.

Further, Defendant 4 Brothers has misinterpreted *Golden State Bottling Co.* Therein, the Court found that a "bona fide purchaser of a business, who acquires and continues the business with knowledge that his predecessor has committed an unfair labor practice in the discharge of an employee, may be ordered by the National Labor Relations Board to reinstate the employee with backpay." 414 U.S. at 170. The Court did not, as Defendant 4 Brothers claims, set forth a standard requiring the affected employee to demonstrate that the successor received a benefit from its predecessor's illegal actions in order to hold a successor liable. Rather, the Court emphasized that the successor liability analysis requires a balancing of the interests of the successor, the public, and the affected employee, which is antithetical to the "*quid pro quo* analysis" that Defendant 4 Brothers attempts to impose. *Id.* at 181-86 ("Avoidance of labor strife, prevention of a deterrent effect on the exercise of rights guaranteed employees by § 7 of the Act, 29 U.S.C. § 157, and protection for the victimized employee—all important policies subserved by the National Labor Relations Act, *see* 29 U.S.C. § 141—are achieved at a relatively minimal cost to the bona fide successor."); Def. Mem. at p. 5. For all of these reasons, Defendant's asserted standard for successor liability is incorrect and its reliance on *Golden State Bottling Co*. does not advance its argument for dismissal.

      **b.**    <u>**The Complaint Alleges Sufficient Facts to Support a Plausible Theory of Successor Liability.**</u>

When analyzed pursuant to the correct standard, the EEOC has more than sufficiently alleged a plausible theory of successor liability against Defendant 4 Brothers. As stated above, the equitable test for successor liability under Title VII considers: "whether a successor had notice, whether a predecessor had the ability to provide relief, and the continuity of the business." *Phase 2 Invs. Inc*., 310 F. Supp. 3d at 570.

i.      **The Complaint Sufficiently Alleges that Defendant had Notice of Brown's Charge when it Purchased the Assets of Defendant Epiq Food Hall Woodbridge, LLC, and Continued its Business Operations.**

The relevant inquiry for the notice factor is whether Defendant 4 Brothers had notice of Brown's claims when purchasing Defendant Epiq Food Hall Woodbridge, LLC's assets. *Id.* This notice "can be actual or constructive." *Id.* "[L]ack of timely knowledge of pending Title VII claims is not a *per se* bar to successor liability." *Braswell*, 1997 WL 1134125, at *5; *Lipscomb*, 2011 WL 691605, at *8 ("As to the notice issue, lack of timely knowledge of a pending EEOC investigation does not *per se* bar successor liability.") (citing *Wheeler v. Snyder Buick, Inc.,* 794 F.2d 1228, 1237 (7th Cir.1986)).

Defendant 4 Brothers argues that the facts alleged in the Complaint are not only insufficient to plead that it had constructive notice of Brown's claims of discrimination, but are "inapposite" of a such a conclusion. Def. Mem. at pp. 3-4. Its arguments plainly misrepresent and misunderstand the facts alleged. Defendant 4 Brothers states that the Complaint alleges Brown filed his Charge "a full eight months *following* Defendant 4 Brothers' acquisition." Def. Mem. at p. 4 (emphasis in original). This is incorrect. The Complaint alleges that Brown filed his Charge on June 3, 2023, Compl. at ¶ 25, and that Defendant 4 Brothers purchased the assets of Defendant Epiq Food Hall Woodbridge, LLC on October 20, 2023. *Id.* at ¶ 10. As such, the Complaint clearly alleges that Brown filed his Charge more than four and a half months *before* Defendant 4 Brothers' purchase of Epiq Food Hall Woodbridge, LLC's assets.

Courts have found analogous allegations that a charge of discrimination was filed *before* a successor's purchase of its predecessor's assets to be sufficient to demonstrate that the successor had constructive notice of the discrimination claims. For example, in *Lipscomb*, a district court

7

within the Fourth Circuit denied the defendant's motion to dismiss, finding the successor had

sufficient constructive notice because it "could have acquired notice of the EEOC complaint prior

to purchasing the [subcontract] with some due diligence and inquiry." 2011 WL 691605, at *9.

The court emphasized that the "[p]laintiff filed his EEOC charge on March 18, 2008, while

Defendant was negotiating with Son's Quality over the purchase of the MDEBEP subcontract.

With some due diligence, Defendant would have been able to ascertain that [p]laintiff had filed an

EEOC charge and Son's Quality was being investigated by the EEOC." *Id.* at *8; *see also Phase 2*

*Invs. Inc.*, 310 F. Supp. 3d at 570 (citing to *Lipscomb* in support of constructive notice, stating

"[i]n *Lipscomb*, the plaintiff did not allege that the defendant had *any* notice of the charge. 2011

WL 691605, at *8. Nevertheless, the court noted that "[w]ith some due diligence, [the]

[d]efendant would have been able to ascertain that [the] [p]laintiff had filed an EEOC charge.").

"Courts look to notice in this context to protect innocent purchasers that were themselves

blindsided, not to reward purchasers that choose to enter deals blindly." *Phase 2 Invs. Inc.*, 310 F.

Supp. 3d at 570 (finding that the successor had "at the very least" constructive notice because it

was a "fairly sophisticated consumer" and "could have acted upon the red flags thrown up by [the

predecessor's] counsel."). Similarly, in *Johnson v. Nestle USA, Inc.*, the court found the plaintiff

"adequately plead the elements of a successor liability claim[,]" where he alleged that "'[p]rior to

… purchase, Fervalue and/or Ferrero had knowledge of Plaintiff's discrimination claim against

Nestle,' and further [laid] out the timeline of Ferrero Defendants' purchase[.]" *See* No. 19-CV-

07119, 2023 WL 6388130, at *6 (N.D. Ill. Sept. 29, 2023) (internal citation omitted). The court

noted that the purchasing defendants "had months prior to the purchase to conduct due diligence"

and learn of the plaintiff's EEOC charge. *Id.*; *see also EEOC v. Universal Diversified Enterprises*

*Inc.*, No. 1:18-CV-23573-UU, 2019 WL 13255689, at *7 (S.D. Fla. Feb. 27, 2019) ("Construing

all reasonable inferences in Plaintiffs' favor, as the Court must at this stage, the Court agrees with

Plaintiffs. It is at least plausible that UDS had notice of Intervenor's EEOC claim by virtue of

having purchased and operated UDE after the filing of the EEOC charge."); *EEOC v. Cnty.*

*Commissioners of Worcester Cnty., Maryland*, No. CV GLR-12-2595, 2013 WL 12327801, at *3

(D. Md. Apr. 22, 2013) (denying the defendant's motion for summary judgment on successor

liability and noting the defendant may have constructive notice of the charge where the charge

was filed before the successor acquired control and the predecessor knew of the charge); *EEOC v.*

*786 South LLC*, 693 F. Supp.2d 792, 795 (W.D. Tenn. 2010) ("It is well-accepted that

constructive notice may suffice under the successor liability doctrine, at least where the relevant

charges have been filed with the EEOC.").[1]

Accordingly, the Complaint's allegations that Brown filed his Charge months before

Defendant 4 Brothers purchased Defendant Epiq Food Hall Woodbridge, LLC's assets and

continued its business operations demonstrates that Defendant 4 Brothers had constructive notice

of the possible Title VII violations by its predecessor because "with some due diligence, [it]

would have been able to ascertain that [Brown] had filed an EEOC charge and [Epiq Food Hall

Woodbridge, LLC] was being investigated by the EEOC." *Lipscomb*, 2011 WL 691605, at *8.

---

[1] The present case is of course distinguishable from those in which courts have found successor liability claims implausible because the charge of discrimination was filed *after* the acquisition took place. *See Brown*, 2022 WL 660602, at *9 (rejecting successor liability where the defendant could not have known of the plaintiff's discrimination claim because her EEOC charge was not perfected until after the successor took over the staffing contract); *Conner v. Colony Lake Lure*, No. 4:97CV01, 1997 WL 816511, at *5 n.3 (W.D.N.C. Sept. 4, 1997) (noting that the discrimination could not have been known to the defendant because the plaintiff's charge and lawsuit was filed after the acquisition); *Desporte-Bryan v. Bank of Am.*, 147 F. Supp. 2d 1356, 1364 (S.D. Fla. 2001) (granting a motion to dismiss where the alleged facts showed that the successor "could not and did not have notice of plaintiff's discrimination claims prior to the merger and acquisition" because the charge was filed after these occurred).

Defendant 4 Brothers also appears to contend that since the EEOC has not plead that it itself provided Defendant 4 Brothers with *actual* notice of Brown's allegations prior to the assets purchase, the EEOC cannot plausibly plead successor liability against it. Def. Mem. at pp. 4-5. Its argument is misplaced. A plaintiff "of course" does not have the "burden of *providing* notice to the successor" as "[n]ormally, the burden would be on the successor to find out from the predecessor all outstanding potential and actual liabilities." *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 752 (7th Cir. 1985) (emphasis added). Discovery will reveal what, if any, due diligence Defendant 4 Brothers engaged in prior to its purchase of Defendant Epiq Food Hall Woodbridge, LLC's assets. However, at this stage of the proceedings, the Complaint's allegations that Defendant 4 Brothers had at least constructive notice at the time of its purchase, along with its allegations regarding the timing of Brown's Charge and Defendant 4 Brothers' purchase, are sufficient to plausibly plead constructive notice. *Kratz v. Richard J. Boudreau & Assocs., LLC*, No. 15-CV-232-SM, 2017 WL 3614434, at *8 (D.N.H. Aug. 22, 2017) ("'At the Fed. R. Civ. P. 12(b)(6) phase, courts are forgiving of claimants who struggle to demonstrate notice before engaging in discovery.'") (quoting *Guarcas v. Gourmet Heaven, LLC*, No. CV 15-056ML, 2016 WL 7632844, at *8 (D.R.I. Nov. 30, 2016), *report and recommendation adopted*, No. 1:15-CV-00056-ML-PAS, 2017 WL 127868 (D.R.I. Jan. 3, 2017)).[2]

### ii. The Complaint Plausibly Demonstrates the Fairness in Holding Defendant 4 Brothers Liable as a Successor.

---

[2] In addition to demonstrating that Defendant had at least constructive notice of the Charge prior to its purchase, the Complaint separately alleges that, when it completed its investigation and issued its findings, the EEOC sent Defendant 4 Brothers the Charge and the Letter of Determination and provided it with the opportunity to participate in conciliation. *See* Compl. at ¶¶ 26-27, 29-30, 32.

In its Motion, because it did not apply the correct legal analysis, Defendant 4 Brothers did not argue that the Complaint failed to sufficiently allege the ability of the predecessor to confer relief or the continuation of the predecessor's business by Defendant 4 Brothers. *See* Def. Mem. However, it is clear that the Complaint has sufficiently alleged facts to demonstrate these factors.

The Complaint alleges that "[i]t is not assured that Defendant Epiq Food Hall has had, or currently has, the ability to provide the requested relief in this matter." Compl. at ¶ 23. Additionally, the Complaint seeks not only monetary relief, but also equitable and injunctive relief that cannot be provided by the predecessor as it no longer owns or operates the food hall. *See id.* at pp. 10-11; *Phase 2 Invs. Inc.*, 310 F. Supp. 3d at 571 (finding this factor easily decided in favor of holding the defendant liable as a successor because the EEOC requested injunctive relief that the predecessor is incapable of providing); *Lipscomb*, 2011 WL 691605, at *8 ("[T]o the extent that injunctive relief is appropriate, it is axiomatic that the current, rather than the former, employer would be the appropriate party."). Therefore, the EEOC has sufficiently plead facts to support this second factor concerning the ability of the predecessor to provide relief.

As to the continuity of business factor, the Complaint details the significant assets Defendant 4 Brothers purchased from its predecessor and alleges Defendant 4 Brothers continues to operate the same business, epiQ Food Hall, at the same address, using the same trade name, trade fixtures, equipment, furniture, and machinery used by its predecessor. Compl. at ¶¶ 11-18, 20. The Complaint also alleges that Defendant 4 Brothers uses the same marketing materials as its predecessor to promote its business, including the same website and social media accounts. *Id.* at ¶ 19. In *Phase 2 Invs. Inc.*, after purchasing the predecessor's car wash, the successor made significant capital improvements, personnel changes, and (after a transition period) no longer

used the predecessor's signage, website, or social media. *See* 310 F. Supp. 3d at 558. Despite these changes, the court found the successor was "running largely the same business" as its predecessor, noting that it was "still operating a car wash" at the same facility. *Id.* at 572; *see also MacMillan Bloedel Containers, Inc*, 503 F.2d at 1094 (denying summary judgment where the successor manufactured containers at the same address where its predecessor had done the same). Accordingly, the EEOC has alleged sufficient facts to plausibly plead a substantial continuity of business operations by Defendant 4 Brothers.

Finally, as noted above, the successor liability analysis under Title VII ultimately seeks to balance the interests of an aggrieved employee, the successor company, and the public policy against discrimination. *MacMillan Bloedel Containers, Inc.*, 503 F.2d at 1091; *Phase 2 Invs. Inc.*, 310 F. Supp. 3d at 569–70 ("Broadly speaking, then, courts should balance the needs of discriminatees and the national policy against discrimination evinced by Title VII against the unfairness of holding an innocent purchaser liable for another's misdeed and the possible chilling of the corporate market."). In this case, the public interest in effective Title VII enforcement is strong, and the fairness of holding 4 Brothers liable as a successor is further supported by the Complaint's allegation that the Defendants included an indemnification clause in their sales agreement. In *Phase 2 Invs. Inc.*, the court noted that the successor's "forethought and sophistication to indemnify itself against [its predecessors]" helped to demonstrate the fairness of holding the defendant liable as a successor. 310 F. Supp. 3d at 571 n. 11; *Brown*, 2022 WL 660602, at *9 (noting the inequity of holding a successor liable when it "'did not have the opportunity to protect itself by an indemnification clause in the acquisition agreement or a lower purchase price'") (quoting *Wheeler*, 794 F.2d at 1236). Here, Defendant 4 Brothers had similar forethought and sophistication as the Complaint alleges the agreement between Defendants 4

Brothers and Epiq Food Hall Woodbridge, LLC included an indemnification clause holding

Defendant Epiq Food Hall Woodbridge, LLC liable for "claims resulting from the operation of

the Business, the basis for which arose before the Closing Date." Compl. at ¶ 22; *see Phase 2*

*Invs. Inc.*, 310 F. Supp. 3d at 571 ("Should the EEOC prevail on liability in this case, and Mister

suffer economic hardship as a result, then it may well look to the APA to seek recourse against

Maritime (or Phase 2, or Mr. Podrog), but that does not help Mister *vis à vis* the EEOC."). All of

these factual allegations, accepted as true as the Court must in deciding a 12(b)(6) motion to

dismiss, are sufficient to plausibly allege the factors considered in the Title VII successor

liability test and to demonstrate the fairness in holding Defendant 4 Brothers liable for the claims

alleged in the Complaint under a theory of successor liability.

## IV.    CONCLUSION

For the reasons stated herein, the EEOC respectfully requests that this Court deny

Defendant 4 Brothers' Rule 12(b)(6) Motion to Dismiss.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

/s/ Debra M. Lawrence
DEBRA M. LAWRENCE
Regional Attorney

/s/ Maria Luisa Morocco
MARIA LUISA MOROCCO
Assistant Regional Attorney
Va. Bar ID 94043
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington Field Office
131 M Street, NE,
Suite 4NW02F
Washington, DC 20507
Phone: (202) 921-4287
Fax: (202) 827-2349

Maria.morocco@eeoc.gov

/s/ Christine T. Johnson
CHRISTINE T. JOHNSON
Trial Attorney
D.C. Bar No. 1739030
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington Field Office
131 M Street, N.E.,
Suite 4NW02F
Washington, D.C. 20507
Phone: (202) 921-3022
christine.t.johnson@eeoc.gov

Dated:         November 12, 2024.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 12, 2024, a copy of the foregoing Memorandum of

Points and Authorities in Opposition to Defendant 4 Brothers Properties, LLC's Motion to

Dismiss was served via the Court's electronic filing system on:

> Bryan K. Short
> Effectus PLLC
> 800 Connecticut Avenue, NW
> Suite 300
> Washington, DC 20006
> bryanshort@effectus.legal
> *Counsel for Defendant 4 Brothers Properties, LLC*

<u>/s/ Christine T. Johnson</u>
CHRISTINE T. JOHNSON
Trial Attorney
D.C. Bar No. 1739030
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington Field Office
131 M Street, N.E. Suite 4NE03
Washington, D.C. 20507
Phone: (202) 921-3022
christine.t.johnson@eeoc.gov
